**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUSY RAMIREZ, JOSEPH MARINELLI, and ASHLEY JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs Susy Ramirez, Joseph Marinelli, and Ashley Johnson ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Action") against The Vanguard Group, Inc. ("Vanguard" or "Defendant"), and allege upon personal knowledge as to themselves and their own actions, and upon information and belief as to all other matters, as follows:

## I. NATURE OF THE ACTION

1. Plaintiffs bring this Class Action Complaint against Vanguard for its failure to secure and safeguard personally identifiable information (the "Private Information") that was entrusted to Vanguard.

2. On or before mid-October 2026, an unauthorized actor gained access to Vanguard's computer network. The unauthorized actor has claimed that it exfiltrated more than 14 million records from Vanguard's network servers. Upon information and belief, this cyberattack resulted in the breach and/or compromise of certain files containing the sensitive personal data of Plaintiffs and other current and former clients of Vanguard.

3. Specifically, the cyberattack resulted in the breach and/or compromise of certain files containing the sensitive personal data of Plaintiffs and likely thousands, if not millions, of other individuals, including but not necessarily limited to names; Social Security numbers; and account and financial information (the "Data Breach").

4. Defendant Vanguard is one of the largest investment management companies in the world and provides mutual funds, exchange-traded funds, brokerage, advisory, and retirement services to investors throughout the country. In providing those services, Vanguard collects and maintains its clients' Private Information, which, by Vanguard's own account, can include their Social Security numbers, income, account transactions, and assets.[1] Vanguard, as one of the largest investment management companies in the world, had the resources available to take seriously the obligation to protect Private Information. However, Vanguard failed to invest the resources necessary to protect the Private Information of Plaintiffs and Class members.

5. The actions of Vanguard related to this Data Breach are unconscionable. Upon information and belief, Vanguard failed to implement practices and systems to mitigate against the risks posed by Vanguard's negligent (if not reckless) IT practices. As a result of these failures, Plaintiffs and Class members face a litany of harms that accompany data breaches of this magnitude and severity.

6. As such, Plaintiffs, individually and on behalf of all others similarly situated, bring this Action for restitution, actual damages, nominal damages, injunctive relief, disgorgement of profits, and all other relief that this Court deems just and proper.

[1] The Vanguard Group, Inc., *Personal Investor Privacy Notice* (rev. Sept. 2023), https://investor.vanguard.com/privacy-center/personal-investor-privacy-notice (last visited Nov. 11, 2026).

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. § 1332(d), as provided by the Class Action Fairness Act, because: this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and members of the Class are citizens of a state different from Defendant. Defendant, a corporation, is a citizen of Pennsylvania, the State under whose laws it is incorporated and in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Plaintiff Ramirez is a citizen of Texas and Plaintiff Johnson is a citizen of Georgia, and, upon information and belief, many Class members are citizens of States other than Pennsylvania; minimal diversity therefore exists. 28 U.S.C. § 1332(d)(2)(A). Upon information and belief, fewer than one-third of the members of the Class are citizens of Pennsylvania, the State in which this Action is filed and in which Defendant maintains its principal place of business, because Defendant serves investors throughout the country and has reported the Data Breach to the attorney general of at least one other State, Vermont. Accordingly, none of the exceptions set forth in 28 U.S.C. § 1332(d)(3) and (d)(4) applies.

8. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located at 100 Vanguard Boulevard, Malvern, Pennsylvania. Defendant is a Pennsylvania corporation that conducts substantial business within this Commonwealth and within this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is located in Malvern, Pennsylvania, within this District, and pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, Defendant's data security decisions and practices at issue in this Action were made and implemented in this District.

## III. PARTIES

10. Plaintiff Susy Ramirez is, and at all times relevant to this Action was, a resident and citizen of Texas. Plaintiff Ramirez resides in Austin, Texas. Plaintiff Ramirez is a current client of Vanguard. Upon information and belief, Plaintiff Ramirez's Private Information was maintained on Vanguard's computer network and was compromised in the Data Breach.

11. Plaintiff Joseph Marinelli is, and at all times relevant to this Action was, a resident and citizen of Pennsylvania. Plaintiff Marinelli resides in New Hope, Pennsylvania. Plaintiff Marinelli is a current client of Vanguard. Upon information and belief, Plaintiff Marinelli's Private Information was maintained on Vanguard's computer network and was compromised in the Data Breach.

12. Plaintiff Ashley Johnson is, and at all times relevant to this Action was, a resident and citizen of Georgia. Plaintiff Johnson resides in Decatur, Georgia. Plaintiff Johnson is a current client of Vanguard. Upon information and belief, Plaintiff Johnson's Private Information was maintained on Vanguard's computer network and was compromised in the Data Breach.

13. At all times material hereto, Vanguard is and was a Pennsylvania corporation. Vanguard is authorized to transact and regularly transacts business in the Commonwealth of Pennsylvania, with its principal place of business in Malvern, Pennsylvania.

## IV. FACTUAL ALLEGATIONS

### *A. Defendant's Business and Collection of Private Information*

14. Vanguard provides investment management, brokerage, advisory, and retirement services to individual investors. Vanguard collects its clients' Private Information when, among other things, they open an account, deposit money, or buy or sell securities, and Vanguard

maintains that Private Information in its computer environment in the course of providing its services.

15. Plaintiffs and the rest of the Class members are current and former clients of Vanguard. As a condition of opening and maintaining their accounts, they were required to provide their extremely sensitive and highly valuable Private Information to Vanguard. Vanguard acquired, stored, and maintained that Private Information in the course of providing services to them.

16. When Plaintiffs and Class members provided their Private Information to Vanguard, they reasonably expected that Vanguard would safeguard their highly sensitive and valuable information and would make only authorized disclosures of this Private Information.

17. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' Private Information, Vanguard assumed legal and equitable duties and knew or should have known that it was responsible for ensuring the safety and security of Plaintiffs' and Class members' Private Information and for protecting such Private Information from unauthorized disclosure and exfiltration.

***B. The Data Breach***

18. On or before mid-October 2026, an unauthorized actor gained access to Vanguard's computer network. Vanguard has not disclosed when that unauthorized access began or when Vanguard discovered it. Upon information and belief, this cyberattack resulted in the Data Breach, including the breach and/or compromise of certain files containing the Private Information of Plaintiffs and likely thousands, if not millions, of other individuals, including but not necessarily limited to names; Social Security numbers; and account and financial information.

19. The Data Breach first came to light in mid-October 2026, when the unauthorized actor posted claims on a dark web cybercrime forum that it had infiltrated Vanguard's network servers and exfiltrated more than 14 million records.[2] On November 4, 2026, Vanguard reported a security breach to the Office of the Vermont Attorney General, disclosing that it affected 94 Vermont residents and involved their Social Security numbers.[3] Upon information and belief, the security breach Vanguard reported in Vermont is the Data Breach.

20. As of the date of this Complaint, Vanguard has not publicly disclosed how many individuals were affected by the Data Breach, when it occurred, or how it occurred, and, upon information and belief, it has not posted notice of the Data Breach on its website. On information and belief, Vanguard has not yet completed notice to affected individuals. Each day without notice deprives affected individuals of the opportunity to take the protective measures described below, such as placing fraud alerts and credit freezes and closely monitoring their accounts, before their Private Information is misused.

21. On information and belief, the Private Information compromised in the portion of Vanguard's computer network accessed by the unauthorized actor was not encrypted. In any event, the cybercriminals were able to access the Private Information listed above.

22. The access and/or acquisition of the Private Information from Vanguard's systems demonstrates that this cyberattack was targeted due to Vanguard's status as a business that houses sensitive Private Information. The unauthorized actor deliberately infiltrated Vanguard's network servers to gain access to the Private Information stored there; the Data Breach was not an

---

[2] *ThreatMon (@MonThreat)*, X (Oct. 16, 2026), https://x.com/MonThreat/status/2111120347026125224.

[3] Office of the Vt. Att'y Gen., *Security Breach Notices*, https://ago.vermont.gov/categories/security-breach-notices (last visited Nov. 11, 2026).

inadvertent disclosure. And the Private Information compromised, including Social Security numbers and the names that accompany them, is precisely the type of information that enables identity theft and fraud, because, unlike a credit card number, a Social Security number cannot readily be changed. Armed with this Private Information, data thieves (as well as downstream purchasers of the stolen Private Information) can commit a variety of crimes, including as follows: opening new financial accounts in Class members' names, taking out loans in Class members' names, using Class members' information to obtain government benefits, filing fraudulent tax returns using Class members' identification information, obtaining driver's licenses in Class members' names but with different photographs, and giving false information to police during any arrests.

23. Due to Vanguard's flawed security measures and Vanguard's delayed response to the Data Breach, Plaintiffs and Class members now face a present, substantial, and imminent risk of fraud and identity theft and must deal with that threat forever.

24. Despite widespread knowledge of the dangers of identity theft and fraud associated with cyberattacks and unauthorized disclosure of Private Information, and despite Vanguard's large operating budget, Vanguard maintained unreasonably deficient protections prior to the Data Breach, including but not limited to a lack of security measures for storing and handling Private Information, as well as inadequate employee training regarding how to access, oversee the protection of, and handle and safeguard this sensitive set of information.

25. Vanguard also failed to adequately adopt and train its employees on even the most basic of information security protocols, including storing, locking, encrypting, and limiting access to Plaintiffs' and Class members' highly sensitive Private Information; implementing guidelines for accessing, maintaining, and communicating sensitive Private Information; and protecting

sensitive Private Information by implementing protocols on how to utilize, store, and handle such information.

26. Vanguard's failures caused the unpermitted disclosure of Plaintiffs' and Class members' Private Information to unauthorized third-party cybercriminals, and have put Plaintiffs and Class members at serious, immediate, and continuous risk of identity theft and fraud.

27. The Data Breach that exposed Plaintiffs' and Class members' Private Information was caused by Vanguard's violation of its obligations to abide by best practices and industry standards concerning its information security practices and processes.

28. Vanguard, despite being a technologically advanced organization, failed to comply with basic security standards or to implement security measures that could have prevented or mitigated the Data Breach.

29. Vanguard failed to ensure that all personnel with access to Plaintiffs' and Class members' Private Information were properly trained in retrieving, handling, using, and distributing sensitive information. Vanguard's personnel also failed, on information and belief, to timely detect and stop the unauthorized actor's intrusion into Vanguard's network servers and its exfiltration of Private Information.

***C. The Data Breach Was Foreseeable***

30. Vanguard has weighty obligations created by federal law, industry standards, common law, and its own promises and representations to keep Private Information confidential and to protect it from unauthorized access and disclosure. Vanguard's Personal Investor Privacy Notice (the "Privacy Notice") acknowledges that the personal information Vanguard collects from its clients can include their "Social Security number and income." In that notice, Vanguard represents that, "[t]o protect your personal information from unauthorized access and use, we use

security measures that comply with federal law," and that "[t]hese measures include computer safeguards and secured files and buildings."[4]

31. Plaintiffs' and Class members' Private Information was provided to Vanguard with the reasonable expectation that Vanguard would comply with its obligations, including those set forth in its Privacy Notice, to keep such information confidential and secure from unauthorized access.

32. Vanguard's data security obligations were particularly acute given the substantial increase in hacks, malware threats, ransomware attacks, and/or other data breaches in various industries, including the financial services industry in which Vanguard provides services, preceding the date of the Data Breach.

33. Vanguard was aware of the risk of data breaches because such breaches have dominated the headlines in recent years.

34. Private information, like the Private Information targeted by the hackers in this Action, is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used in a variety of unlawful manners. Private Information can be used to distinguish, identify, or trace an individual's identity. This can be accomplished alone or in combination with other personal or identifying information that is connected or linked to an individual, such as the information compromised in the Data Breach.

35. Given the nature of the Data Breach, it is foreseeable that the compromised Private Information can now be used by hackers and cybercriminals in a variety of different and harmful ways.

---

[4] The Vanguard Group, Inc., Personal Investor *Privacy Notice* (rev. Sept. 2023), https://investor.vanguard.com/privacy-center/personal-investor-privacy-notice (last visited Nov. 11, 2026).

36. Cybercriminals who possess Plaintiffs' and Class members' Private Information can (either in isolation or in tandem with other information) obtain Plaintiffs' and Class members' tax returns or open fraudulent credit cards or other types of accounts in Plaintiffs' and Class members' names.

37. The increase in such attacks, and attendant risk of future attacks, was widely known.

38. As such, this Data Breach was foreseeable. Defendant was cognizant of the huge risk of data breaches because of how common and high-profile data breaches have become with respect to businesses that have custody of Private Information, such as Vanguard.

***D. Defendant Failed to Follow FTC Guidelines and Industry Standards***

39. Experts studying cybersecurity routinely identify businesses that maintain large volumes of individual-specific information as being particularly vulnerable to cyberattacks because of the value of the data which they collect and maintain. The reason this data is so valuable is because it contains sensitive details such as the Private Information, which can be sold and weaponized for purposes of committing various identity theft-related crimes. It is well-known that, because of the value of this data and Private Information, businesses that collect, store, maintain, and otherwise utilize or profit from Private Information must take necessary cybersecurity safeguards to ensure that the data they possess is adequately protected.

40. Government agencies also highlight the importance of cybersecurity practices. For example, the Federal Trade Commission ("FTC") has promulgated numerous guides for businesses, which highlight the importance of implementing reasonable data security practices.

41. According to the FTC, the need for data security should be factored into all business decision-making.[5]

42. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[6]

43. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand network vulnerabilities; and implement policies to correct any security problems.

44. The guidelines also recommend that businesses use an intrusion detection system to detect and expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack their systems; watch for large amounts of data being transmitted from their systems; and have a response plan ready in the event of a breach.

45. The FTC further recommends that companies not maintain Private Information longer than is needed for the purpose for which it was collected; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on their network; and verify that third-party service providers have implemented reasonable security measures.

46. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect individuals' data, in some cases treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as

---

[5] *See* Fed. Trade Comm'n, *Start with Security: A Guide for Business* (rev. Aug. 2023), https://www.ftc.gov/business-guidance/resources/start-security-guide-business.

[6] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"). Orders resulting from these actions further explicate and clarify the measures businesses must take to meet their data security obligations.

47. Defendant failed to properly implement some or all of these (and other) basic data security practices.

48. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

49. As a financial institution, Vanguard is also subject to the Gramm-Leach-Bliley Act ("GLBA"), which declares that each financial institution has "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). Vanguard's own Privacy Notice acknowledges that federal law requires it to tell its clients how it collects, shares, and protects their personal information.

50. Upon information and belief, Vanguard is an investment adviser registered with the Securities and Exchange Commission and is subject to Regulation S-P, 17 C.F.R. Part 248, which implements the GLBA's safeguarding requirements for covered institutions. As amended in 2024, Regulation S-P requires a covered institution to maintain written policies and procedures reasonably designed to protect customer information, including an incident response program reasonably designed to detect, respond to, and recover from unauthorized access to or use of customer information, and to notify each affected individual whose sensitive customer information was, or is reasonably likely to have been, accessed or used without authorization as soon as practicable, but not later than 30 days, after becoming aware of the incident. 17 C.F.R. § 248.30(a).

51. Defendant at all times was fully aware of its obligations to protect Private Information. Defendant was also keenly aware of the significant repercussions that would result from the failure to do so.

52. Several best practices have been identified that, at a minimum, should be implemented by businesses such as Vanguard that maintain Private Information, including but not limited to the following: educating all employees about cybersecurity; requiring strong passwords; maintaining multi-layer security, including firewalls, anti-virus programs, and anti-malware software; utilizing encryption; making data unreadable without a key; implementing multi-factor authentication; backing up data; and limiting which particular employees can access sensitive data.

53. Other best cybersecurity practices that are standard in the industry include installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; and training staff regarding critical points.

54. The foregoing frameworks are existing and applicable industry standards. Vanguard failed to comply with these accepted standards, thereby facilitating and causing the Data Breach.

***E. Defendant's Breaches of Its Obligations***

55. Defendant breached its obligations to Plaintiffs and Class members and was otherwise negligent and/or reckless because Defendant failed to properly maintain, oversee, and safeguard its computer systems, network, and data. In addition to its obligations under federal and state law, Defendant owed a duty to Plaintiffs and Class members to exercise reasonable care when obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its

possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. Defendant owed a duty to Plaintiffs and Class members to provide reasonable security, including complying with industry standards and requirements, providing training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiffs and Class members.

56. Defendant's wrongful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect Plaintiffs' and Class members' Private Information;

c. Failing to implement updates and patches in a timely manner;

d. Failing to identify and remediate vulnerabilities within its computer network;

e. Failing to properly monitor its computer environment for vulnerabilities, existing intrusions, and unauthorized access;

f. Failing to ensure that all employees and third parties apply all available and necessary security updates;

g. Failing to ensure that all employees and third parties install the latest software patches, update their firewalls, check user account privileges, and ensure proper security practices;

h. Failing to ensure that all employees and third parties practice the principle of least-privilege and maintain credential hygiene;

i. Failing to segment its computer environment to limit the Private Information accessible through any single point of compromise;

j. Failing to adequately oversee employees and third-party vendors;

k. Failing to encrypt Private Information stored within its computer environment; and

l. Failing to timely detect and stop unauthorized access to its computer network and the exfiltration of Private Information from it.

57. As a result of allowing its computer systems to fall into a state of serious security deficiency and its inadequate procedures for handling cybersecurity threats, Vanguard negligently and wrongfully failed to safeguard Plaintiffs' and Class members' Private Information.

58. Accordingly, as further detailed herein, Plaintiffs and Class members now face a substantial, increased, and immediate risk of fraud, identity theft, and the disclosure of their most sensitive and deeply personal information.

***F. Data Breaches Are Harmful and Disruptive***

59. The United States Government Accountability Office ("GAO") released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[7]

60. That is because all victims of a data breach may be exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal Private Information is to monetize it because there is (unfortunately) a market for Private Information, like the Private Information compromised by the Data Breach.

61. Cybercriminals do this by selling the spoils of their cyberattacks on the illegal market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a

[7] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

person's identity is akin to a puzzle, the greater number of accurate individual pieces of data an identity thief obtains regarding a person, the easier it is for that thief to take on the victim's identity, or otherwise to harass or track the victim.

62. For example, armed with only a name and a Social Security number, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information regarding a victim's identity, such as a person's login credentials. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls, deceptive text messages, and phishing emails.

63. Because of the threat of these harms, the FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach such as the Data Breach at issue here, including contacting one of the credit bureaus to place a fraud alert (and potentially obtaining an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, purchasing credit monitoring, and correcting their credit reports.[8]

64. Theft of Private Information is gravely serious. Private Information is an extremely valuable property right.

65. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates that Private Information has considerable market value.

66. According to the GAO:

---

[8] *See* Fed. Trade Comm'n, IdentityTheft.gov, https://www.identitytheft.gov/Steps.

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

*See* GAO Report, at p. 29.

67. Private information, such as the Private Information compromised in the Data Breach, is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. The private information of individuals remains of high value to criminals, as evidenced by the prices paid through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, certain sets of private information can be sold at a price from $40 to $200.[9] Social Security numbers, which were compromised in this Data Breach, are particularly valuable. Clearly, all this data has real value – which is why it is often targeted and stolen in the first place.

68. Because the Private Information compromised in the Data Breach is at substantial risk of being disclosed on the dark web, Plaintiffs and Class members are at a substantial imminent risk of injury, including an increased risk of fraud and identity theft for many years into the future.

69. Thus, Plaintiffs and Class members must vigilantly monitor their financial accounts and other indicators of identity theft (e.g., the mail, email, etc.) for many years to come.

70. Plaintiffs and Class members suffered actual injury from having their Private Information compromised as a result of the Data Breach, including, but not limited to, as follows: (a) the compromise of their Private Information to unauthorized criminal actors; (b) damage to and diminution in the value of their Private Information, a form of property that Defendant obtained

[9] Anita George, *Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

from Plaintiffs and Class members; (c) violation of their privacy, including the compromise of highly sensitive Private Information; (d) present, imminent, and impending injury arising from the increased risk of identity theft and fraud; and (e) actual and potential out-of-pocket losses, including the loss of time and the loss of money.

## V. CLASS ALLEGATIONS

71. Plaintiffs bring this nationwide class action individually and on behalf of all others similarly situated pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. The "Class" that Plaintiffs seek to represent is defined as follows:

> **Class Definition.** All persons in the United States whose Private Information was maintained by Vanguard and was compromised in the Data Breach.

72. Excluded from the Class are Defendant and Defendant's subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

73. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

74. **Numerosity**. The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are likely thousands, if not millions, of individuals whose Private Information was improperly accessed in the Data Breach, and each Class member is identifiable within Defendant's records.

75. **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

> a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class members' Private Information;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Plaintiffs and Class members to safeguard their Private Information;

f. Whether Defendant breached its duties to Plaintiffs and Class members to safeguard their Private Information;

g. Whether computer hackers / cybercriminals obtained Plaintiffs' and Class members' Private Information in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiffs and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

j. Whether Defendant's acts, inactions, and practices complained of herein amount to a breach of contract or implied contract, and/or common law negligence, and whether Defendant has been unjustly enriched;

k. Whether Defendant failed to provide notice of the Data Breach in a timely and proper manner; and

l. Whether Plaintiffs and Class members are entitled to compensatory damages, exemplary damages, punitive damages, equitable relief, and/or injunctive relief.

76. **Typicality**. Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Private Information, like that of every other Class member, was compromised by the Data Breach. Further, Plaintiffs, like all Class members, were injured by Defendant's uniform conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of

Plaintiffs and those of other Class members arise from the same operative facts and are based on the same legal theories.

77. **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and they have no disabling or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights that Plaintiffs suffered are typical of the other Class members, and Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class. Plaintiffs have a genuine personal interest, not a mere technical interest, in the outcome of this Action. Plaintiffs have retained counsel experienced in complex class action litigation, including, but not limited to, data privacy class action litigation, and Plaintiffs intend to prosecute this Action vigorously. Therefore, Plaintiffs can and will fairly and adequately protect and represent the interests of the Class.

78. **Superiority of Class Action**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based upon an identical set of facts. Without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

79. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members – whom Defendant has already identified (at least in part), as demonstrated by its report to the Office of the Vermont Attorney General quantifying the number of Vermont residents impacted by the Data Breach – demonstrate that there would be no significant manageability

problems with prosecuting this lawsuit as a class action. This proposed class action does not present any unique management difficulties.

80. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

81. **Predominance.** The issues in this Action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Defendant has engaged in a common course of conduct toward Plaintiffs and Class members. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

## COUNT I

## NEGLIGENCE

82. Plaintiffs repeat and reallege paragraphs 1-70 as if fully set forth herein.

83. Vanguard knowingly collected, acquired, stored and/or maintained Plaintiffs' and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information from being disclosed, compromised, lost, stolen, or misused by unauthorized parties.

84. This duty included obligations to take reasonable steps to prevent disclosure of the Private Information, and to safeguard the information from theft. Vanguard's duties include the responsibility to design, implement, and monitor its data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

85. Defendant owed a duty of care to Plaintiffs and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, its policies and procedures, and the personnel responsible for them adequately protected the Private Information.

86. Defendant owed a duty of care to safeguard the Private Information due to the foreseeable risk of data breaches and the severe consequences that would result from its failure to safeguard Private Information. Defendant's duty also arose from its own affirmative conduct: Defendant chose to collect and store Plaintiffs' and Class members' Private Information, including their Social Security numbers, in its computer environment, and in doing so created a foreseeable risk of harm to Plaintiffs and Class members if that environment was not reasonably secured.

87. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those individuals whose Private Information was entrusted to Defendant, which duty is recognized by laws and regulations, including but not limited to the FTCA and common law.

88. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the FTCA, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

89. Defendant's duty to use reasonable care in protecting Private Information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect Private Information that it acquires, maintains, or stores.

90. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class members' Private Information, as alleged and discussed

above.

91. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiffs' and Class members' Private Information would result in injury to Plaintiffs and Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches against companies that have custody of Private Information.

92. It was therefore foreseeable that the failure to adequately safeguard Plaintiffs' and Class members' Private Information would result in one or more types of injuries to Class members.

93. The imposition of a duty of care on Defendant to safeguard the Private Information it maintained, transferred, stored, or otherwise used is appropriate because any social utility of Defendant's conduct is outweighed by the injuries suffered by Plaintiffs and Class members as a result of the Data Breach.

94. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members are at a current and ongoing imminent risk of identity theft, and Plaintiffs and Class members sustained compensatory damages, including the following: (i) invasion of privacy; (ii) financial out-of-pocket costs incurred mitigating the material risk and imminent threat of identity theft; (iii) loss of time and loss of productivity incurred mitigating the material risk and imminent threat of identity theft; (iv) financial out-of-pocket costs that will be incurred due to identity theft resulting from the Data Breach; (v) loss of time that will be incurred due to such identity theft; (vi) loss of time due to increased spam and targeted marketing emails; (vii) diminution of value of their Private Information; (viii) future costs of identity theft monitoring and/or credit monitoring; (ix) anxiety, annoyance, and nuisance; and (x) the continued risk to Private Information, which remains

in Defendant's and the threat actors' respective control, and which is subject to further breaches, including for so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' Private Information.

95. Plaintiffs and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

96. Vanguard's negligent conduct is ongoing, in that Vanguard still holds the Private Information of Plaintiffs and Class members in an unsafe and unsecure manner.

97. Plaintiffs and Class members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class members.

## COUNT II

## BREACH OF IMPLIED CONTRACT

98. Plaintiffs repeat and reallege paragraphs 1-70 as if fully set forth herein.

99. In connection with opening and maintaining accounts with Defendant, Plaintiffs and Class members entrusted their Private Information to Defendant.

100. By accepting Plaintiffs' and Class members' Private Information for the purpose of providing services to them, and by publicly representing in its Privacy Notice that it would protect that information, Defendant entered into an implied contract with Plaintiffs and Class members that it would protect the Private Information it received concerning them.

101. Plaintiffs and Class members were required to provide their Private Information to Defendant as a condition of opening and maintaining their accounts. In doing so, they were of the belief that this information would be safely guarded.

102. Defendant accepted possession of Plaintiffs' and Class members' Private Information for the purpose of providing services to them.

103. In providing its services, Defendant knew or should have known that it must protect Plaintiffs' and Class members' confidential Private Information in accordance with Defendant's stated policies, including its Privacy Notice, and industry best practices.

104. Pursuant to these implied contracts, Defendant agreed to certain implied promises to Plaintiffs and Class members, including but not limited to the following: (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information placed in control of Defendant's employees is restricted and limited only to achieve authorized business purposes; (3) restricting Private Information access only to employees and/or agents who are qualified and trained; (4) designing and implementing appropriate retention policies to protect Private Information; (5) applying or requiring proper encryption and/or the separation of different data sets containing Private Information; (6) implementing multi-factor authentication for access to Private Information; (7) conducting periodic risk assessments and timely remediating identified security vulnerabilities; and (8) taking other steps to protect against foreseeable breaches.

105. By entering into such implied contracts, Plaintiffs and Class members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

106. Defendant violated these implied contracts and these implied promises by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class members' Private Information.

107. Plaintiffs' and Class members' Private Information would not have been entrusted to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

108. Plaintiffs and Class members fully and adequately performed their obligations under their implied contracts with Defendant.

109. Plaintiffs and Class members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein. Plaintiffs and Class members seek damages, including restitution, actual damages, nominal damages, and any other awardable form of damages, in an amount to be proven at trial.

## COUNT III

## UNJUST ENRICHMENT

110. Plaintiffs repeat and reallege paragraphs 1-70 as if fully set forth herein.

111. This count is asserted in the alternative to breach of implied contract (Count II).

112. Plaintiffs and Class members conferred a benefit on Defendant in the form of their Private Information, which they provided to Defendant and which Defendant used to provide services to them – services that Defendant could not have provided, and for which it could not have been paid, without that Private Information. Defendant knew of, appreciated, and accepted that benefit.

113. Defendant, prior to and at the time it received Plaintiffs' and Class members' Private Information, publicly represented, including in its Privacy Notice, that it would keep that Private Information secure, causing Plaintiffs and Class members to reasonably believe that it would do so.

114. The fees Defendant received from Plaintiffs and Class members, directly or indirectly, for services that depended on Plaintiffs' and Class members' Private Information included amounts that were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiffs' and Class members' Private Information.

115. In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures in order to secure Plaintiffs' and Class members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiffs and Class members by utilizing cheaper, ineffective security measures. Plaintiffs and Class members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

116. Under the principles of equity and good conscience, Defendant should not be permitted to retain the benefits it derived from Plaintiffs' and Class members' Private Information, including the fees it earned through the use of that Private Information and the data security costs it avoided, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

117. Defendant failed to secure Plaintiffs' and Class members' Private Information and, therefore, retained the full value of the benefit Plaintiffs and Class members conferred without providing the data security on which that benefit was conditioned.

118. Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged to Plaintiffs or Class members, while publicly representing that it used security measures that comply with federal law.

119. Defendant failed to disclose facts pertaining to its substandard information systems, or defects and vulnerabilities therein, before it obtained Plaintiffs' and Class members' Private Information.

120. Plaintiffs and Class members have no adequate remedy at law.

121. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have suffered and will suffer injury, including but not limited to the following: (a) a present and substantial risk of identity theft; (b) the loss of the opportunity to control how their Private Information is used; (c) the compromise, publication, and/or theft of their Private Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures, including for so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class members.

122. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm.

123. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that Defendant unjustly received

through its use of their Private Information. This can be accomplished by establishing a constructive trust from which Plaintiffs and Class members may seek restitution or compensation.

**COUNT IV**

**DECLARATORY JUDGMENT**

124. Plaintiffs repeat and reallege paragraphs 1-70 as if fully set forth herein.

125. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights, statuses, and legal relations of the parties and to grant further necessary relief.

126. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class members' Private Information and whether Vanguard is currently maintaining data security measures adequate to protect Plaintiffs and Class members from further data breaches that compromise their Private Information. Plaintiffs allege that Vanguard's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

127. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Vanguard owes a legal duty to secure Private Information and to timely notify impacted individuals of a data breach under common law and state statutes; and

b. Vanguard continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

128. This Court also should issue corresponding prospective injunctive relief requiring Vanguard to employ adequate security protocols consistent with law and industry standards to protect Private Information in Vanguard's data network.

## VI. PRAYER FOR RELIEF

129. WHEREFORE, Plaintiffs, on their own behalf and on behalf of all others similarly situated, pray for relief as follows:

A. For an Order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B. For an award of actual damages, exemplary damages, punitive damages, compensatory damages, and nominal damages, in an amount to be determined, as allowable by law;

C. For injunctive and other equitable relief to ensure the protection of the sensitive information of Plaintiffs and the Class, which remains in Defendant's possession;

D. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

E. Pre- and post-judgment interest on any amounts awarded; and

F. Such other and further relief as the Court may deem just and proper.

## VII. JURY TRIAL DEMAND

130. Plaintiffs hereby demand a trial by jury on all claims so triable.

[*signature page follows*]

DATED: November 12, 2026

Respectfully submitted,

*/s/ Peter J. Biscontini*

Peter J. Biscontini, Esq. (Bar No. 313521)
**THE BISCONTINI LAW FIRM**
The Waterfront Complex
670 S. River Street, Suite 205
Plains, PA 18705
Telephone: (570) 283-7777
peter@biscontinilaw.com

Israel David (*pro hac vice* forthcoming)
Adam M. Harris (*pro hac vice* forthcoming)
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Telephone: (212) 350-8850
israel.david@davidllc.com
adam.harris@davidllc.com

Mark A. Cianci (*pro hac vice* forthcoming)
**ISRAEL DAVID LLC**
399 Boylston Street, Floor 6, Suite 23
Boston, Massachusetts 02116
Telephone: (617) 295-7771
mark.cianci@davidllc.com

*Attorneys for Plaintiffs and the Proposed Class*